UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| PATRICIA SERROS, § | |
| *Plaintiff*, § | |
| v. § | |
| § | EP-24-CV-00332-DCG-MAT |
| FRANK BISIGNANO, COMMISSIONER § | |
| OF THE SOCIAL SECURITY § | |
| ADMINISTRATION,[1] § | |
| *Defendant*. § | |

## REPORT AND RECOMMENDATION

Plaintiff Patricia Serros ("Plaintiff") appeals from a decision of the Commissioner of the Social Security Administration ("Defendant") denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act. On September 16, 2024, Senior United States District Judge David C. Guaderrama referred this case to the undersigned for review and recommendation pursuant to 28 U.S.C. § 636(b) and Appendix C to the Local Rules of the United States District Court for the Western District of Texas. For the following reasons, the Court **RECOMMENDS** that the decision of the Commissioner be **AFFIRMED** pursuant to 42 U.S.C. § 405(g).

### I.   BACKGROUND & PROCEDURAL HISTORY

Plaintiff is a fifty-six-year-old woman with a high school education and past relevant work as a receptionist, medical clerk, and administrative clerk. *See* Tr. of Admin. R. ("Tr.") 37, 176, 393, ECF No. 7. On July 14, 2021, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, beginning on October 10, 2019. *Id.* 347. Plaintiff alleged disability due to blindness or low vision in the left eye, a prior stroke in 2017, blood clots in the

---

[1] Frank Bisignano became the Commissioner of the Social Security Administration on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, "Frank Bisignano, Commissioner of the Social Security Administration" should be substituted as the defendant in this suit.

1

brain, a dislocated left shoulder, anxiety, high blood pressure, and high cholesterol. *Id.* 187–89. At the time of the application, Plaintiff was fifty-three years old. *Id.* 187.

On April 4, 2022, Plaintiff's claims were denied at the initial level. *Id.* 227, 237. Upon reconsideration, her claims were denied again on February 1, 2023. *Id.* 262, 266. On February 22, 2023, Plaintiff appealed the decision and requested a hearing by an Administrative Law Judge ("ALJ"). *Id.* 277. The ALJ, the Honorable Michael Leppala, held a telephonic hearing on September 13, 2023. *Id.* 156. On September 26, 2023, the ALJ issued a decision denying Plaintiff's claims. *Id.* 148. Plaintiff requested review of the ALJ's decision, which the Appeals Council denied on April 18, 2024. *Id.* 20. The ALJ's decision became the final decision of the Commissioner at that time. Plaintiff now seeks judicial review of the decision.

On appeal, Plaintiff presents three issues for the Court. First, Plaintiff argues that, because the medical opinion from the State Agency Medical Consultants ("SAMC") did not offer an opinion regarding Plaintiff's physical functioning, the ALJ substituted his lay interpretation of raw medical data into the residual functional capacity ("RFC") assessment. Plaintiff's Brief ("Pl.'s Br.") 7, ECF No. 9. Next, Plaintiff argues that the ALJ erred by failing to consider Plaintiff's non-severe mental impairments in formulating the RFC. *Id.* 10. Lastly, Plaintiff argues that the ALJ erred by failing to incorporate all limitations from the State Agency Psychological Consultants' ("SAPC") medical opinion into the RFC. *Id.* 18. For the reasons set forth below, the Court finds that the ALJ did not commit any legal error and affirms the ALJ's decision.

## II. DISCUSSION

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to a determination of whether (1) the Commissioner's final decision is supported by substantial evidence on the record and (2)

the Commissioner applied the proper legal standards. *See* 42 U.S.C. § 405(g); *see also Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014).

"Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sun v. Colvin*, 793 F.3d 502, 508 (5th Cir. 2015). In applying the "substantial evidence" standard, "the court scrutinizes the record to determine whether such evidence is present," *id.*, but it may not "try the issues *de novo*" or "reweigh the evidence." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018). "[N]or, in the event of evidentiary conflict or uncertainty," may the court substitute its judgment for the Commissioner's, "even if [it] believe[s] the evidence weighs against the Commissioner's decision." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018). "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Sun*, 793 F.3d at 508. "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016).

Generally, "[w]here . . . the Secretary has relied on erroneous legal standards in assessing the evidence, she must reconsider that denial." *Leidler v. Sullivan*, 885 F.2d 291, 294 (5th Cir. 1989). However, even if the ALJ commits legal error, "remand is warranted only if the . . . error was harmful." *Miller v. Kijakazi*, No. 22-60541, 2023 WL 234773, at *3 (5th Cir. Jan. 18, 2023) (per curiam) (unpublished) (citing *Shineski v. Sanders*, 556 U.S. 396, 407–08 (2009)); *see also Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected."). "Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err." *Keel v. Saul*, 986

3

F.3d 551, 556 (5th Cir. 2021). Furthermore, it is plaintiff's burden to show prejudice or harm from the error. *Jones v. Astrue*, 691 F.3d 730, 734–35 (5th Cir. 2012).

### B. Evaluation Process

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment … which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 416(i). In evaluating a disability claim, the ALJ follows a five-step sequential process to determine whether: (1) the claimant is presently engaged in substantial gainful employment; (2) the claimant has a severe medically determinable physical or mental impairment; (3) the claimant's impairment meets or medically equals an impairment listed in the appendix to the regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from performing other substantial gainful activity. 20 C.F.R. § 404.1520(a)(4); *Salmond*, 892 F.3d at 817.

Between steps three and four, the ALJ determines the claimant's RFC. 20 C.F.R. § 404.1520(e). The RFC "is the most [the claimant] can still do despite [their] limitations." *Id.* § 404.1545(a)(1). The ALJ determines the RFC by examining "all of the relevant medical and other evidence." *Id.* § 404.1545(a)(3). When using medical opinions as evidence, the ALJ must assess the persuasiveness of such evidence in her opinion. *Id.* § 404.1520c(a). Persuasiveness is based on several factors that the ALJ must consider, but the ALJ is only required to articulate "supportability" and "consistency" in her decision. *Id.* § 404.1520c(b)(2). The ALJ then uses the claimant's RFC in making determinations at steps four and five. *Id.* § 404.1520(e).

"[A]n individual claiming disability insurance benefits under the Social Security Act has the burden of proving her disability." *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983). Thus,

the claimant carries the burden of proof through the first four steps. *Anderson v. Sullivan*, 887 F.2d 630, 632 (5th Cir. 1989). If the claimant meets this burden, at step five the burden shifts to the Commissioner "to show that there is other substantial gainful employment available that the claimant is capable of performing." *Fraga v. Bowen*, 810 F.2d 1296, 1301–02 (5th Cir. 1987). If the Commissioner satisfies this burden, "the burden then shifts back to the claimant to prove that she is unable to perform the alternate work." *Id.* at 1302.

    C.    **The ALJ's Findings**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of October 10, 2019. Tr. 141. At step two, the ALJ found that Plaintiff had the following severe impairment: ischemic stroke.[2] *Id.* The ALJ found that Plaintiff had the following non-severe impairments: anxiety disorder and depressive disorder. *Id.* 142. At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* 143–44. Next, the ALJ found that Plaintiff retained the RFC "to perform sedentary work[3] as defined in 20 C.F.R. § 404.1567(a) and 416.967(a)" with limitations to "occasionally climbing ramps or stairs, never climbing ladders, ropes, or scaffolds, occasionally balancing, stooping, kneeling, crouching, and crawling." *Id.* 144, 146. Additionally, the ALJ noted that Plaintiff "must avoid all exposure to cold." *Id.* At step four, the ALJ concluded that Plaintiff "is capable of performing past relevant work as a receptionist." *Id.* 147. At step five, the ALJ determined that Plaintiff was not disabled under the Social Security Act from October 10,

---

[2] An ischemic stroke is one caused by a blood clot in "a vessel supplying blood to the brain." *Ischemic Stroke (Clots)*, American Stroke Ass'n, https://www.stroke.org/en/about-stroke/types-of-stroke/ischemic-stroke-clots] (last visited August 11, 2025).
[3] Sedentary work involves sitting, however, "walking and standing are required occasionally." 20 C.F.R. § 404.1567(a). Sedentary work has an additional limitation to "lifting no more than 10 pounds at a time." *Id.*

2019 (her alleged disability onset date) through September 26, 2023 (the date of the ALJ's decision). *Id.* 148.

### D. Analysis

On appeal, Plaintiff presents three issues for the Court. First, Plaintiff argues that, because the SAMCs' medical opinion did not offer an opinion regarding Plaintiff's physical functioning, the ALJ substituted his lay interpretation of raw medical data in formulating the RFC. Pl.'s Br. 7. Next, Plaintiff argues that the ALJ erred by failing to consider Plaintiff's non-severe mental impairments in formulating the RFC. *Id.* 10. Lastly, Plaintiff argues that the ALJ erred by failing to incorporate all limitations from the SAPCs' medical opinion into his RFC. *Id.* 18. For the reasons set forth below, the Court finds that the ALJ did not commit any reversible legal error and affirms the ALJ's decision.

**1. The ALJ did not substitute his lay opinion of raw medical data in formulating the RFC because the ALJ interpreted the objective medical evidence and Plaintiff's testimony.**

Plaintiff contends that because the SAMCs' medical opinion did not offer an opinion regarding Plaintiff's physical functional capacity, the ALJ substituted his lay opinion of raw medical data in formulating the RFC. Pl.'s Br. 6–7. Defendant, by contrast, argues that "what Plaintiff contends was the ALJ substituting his opinion for that of the medical opinion was actually the ALJ properly interpreting medical and non-medical evidence of record to determine her capacity for work." Brief in Support of the Commissioner's Decision ("Def.'s Br.") 9, ECF No. 10.

The Court agrees with Defendant. Despite the lack of a medical opinion regarding physical functioning, the ALJ interpreted objective medical evidence and Plaintiff's testimony—not raw medical data—in formulating the RFC. Hence, the ALJ did not commit legal error, and substantial evidence supports the ALJ's RFC.

### a. The ALJ properly interpreted objective medical evidence and Plaintiff's testimony in formulating the RFC.

In the absence of a medical opinion, an ALJ may formulate an RFC based on their interpretation of objective medical evidence and non-medical evidence of record, including a claimant's testimony. *See Myers v. Saul*, No. SA-20-CV-00445-XR, 2021 WL 4025993, at *8 (W.D. Tex. Sept. 3, 2021) (noting that an ALJ is permitted to interpret medical evidence to determine the RFC without a medical opinion); *Gutierrez v. Barnhart*, No. 04-11025, 2005 WL 1994289, at *7 (5th Cir. Aug. 19, 2005) (finding no error in ALJ's RFC formulation, even without a medical opinion regarding the plaintiff's physical functional capacity, because the ALJ relied on medical evidence, and the plaintiff's "own testimony that she was able to perform certain tasks despite having claimed serious shoulder impairment").

Nevertheless, it is crucial to note that there is a distinction between evidence that an ALJ is permitted to interpret and evidence that an ALJ cannot. *See Hernandez v. O'Malley*, No. 5-23-CV-01403-OLG-RBF, 2025 WL 899971, at *3 (W.D. Tex. Feb. 27, 2025) (explaining the difference between objective medical evidence, which an ALJ is permitted to interpret, and raw medical data, which an ALJ cannot interpret). Objective medical evidence, which ALJs are permitted to interpret, is described as medical evidence "where the extent of functional loss and its effects on job performance would be apparent even to a lay person." *Id.* (quoting *Graham v. Comm'r of Soc. Sec.*, No. 2:22-CV-00161-HSO-BWR, 2024 WL 1009538, at *13 (S.D. Miss. Jan. 23, 2024)). An ALJ may not, however, interpret raw medical data. *Id.* In contrast to objective medical evidence, raw medical data is evidence that "does not permit 'common sense judgements about functional capacity.'" *Id.*; *see Moore v. Saul,* No. 3:20CV161-MPM-JMV, 2022 WL 987735, at *3 (N.D. Miss. Mar. 31, 2022) (holding that the ALJ interpreted raw medical data, rather than objective medical evidence, where the ALJ drew conclusions from evidence wholly

7

unconsidered by any medical expert, such as the plaintiff's MRI results, the plaintiff's pain, and her treatment history for her back and knee).

Courts have found that ALJs properly interpreted objective medical evidence—rather than raw medical data—in cases where the medical evidence stated a claimant had generally "normal" physical functioning, "no" impairments or deficits, or "unremarkable" findings. *See, e.g., Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012) (holding that the ALJ properly interpreted medical evidence where the evidence "include[ed] an MRI that was 'normal,' an EEG test finding that was 'normal,' neurophysiological studies that were 'unremarkable,' and an MRI of the plaintiff's brain that was 'essentially normal'"); *Danzy v. Comm'r. of Soc. Sec.*, No. SA-21-CV-00350-XR, 2022 WL 2063730, at *4 (W.D. Tex. June 8, 2022) (finding that the ALJ's RFC determination was supported by substantial evidence, despite lacking a medical opinion in the record, where the ALJ interpreted medical evidence "document[ing] normal motor strength and muscle tone, normal gait, normal ambulation, no abnormalities, and normal movement of all extremities"); *Gonzales v. Colvin*, No. 3:15-CV-0685-D, 2016 WL 107843, at *9–10 (N.D. Tex. Jan. 11, 2016) (finding that the ALJ's RFC determination was supported by substantial evidence, despite lacking a medical opinion in the record, where the ALJ "cited reports concluding that Gonzales had a normal heart, clear lungs, no pulmonary abnormalities, no shortness of breath, no chest pain, normal gait, full range of motion, normal grip strength, no evidence of cirrhosis or portal hypertension, and normal blood pressure with his medication").

Here, the ALJ properly interpreted medical evidence in formulating the RFC because, similar to *Taylor*, *Danzy*, and *Gonzales*, the medical evidence in this case generally indicated "normal" findings of physical function, "no" physical impairment, or was evidence "where the extent of functional loss and its effects on job performance would be apparent even to a lay

person." *Hernandez*, 2025 WL 899971, at *3. Throughout the RFC assessment, the ALJ referenced "normal" findings within the medical evidence multiple times. *See* Tr. 146–47. Specifically, the ALJ cited Plaintiff had "normal" physical exams, "normal shoulder movements," "normal grip strength," "normal knee and ankle movement," "normal gait," and "normal pulses." *Id.* 146. In addition, the ALJ noted that Plaintiff had "no edema," "no muscle weakness," and "no deficit" caused by her stroke in 2017. *Id.* The ALJ was permitted to interpret this medical evidence because the medical evidence stated there was "normal" physical function and "no" physical impairments or limitations. None of this medical evidence was an interpretation of raw medical data; instead, it was the ALJ reiterating the findings from the medical evidence of record. Hence, because the ALJ interpreted medical evidence stating Plaintiff had "normal" physical function and "no" physical impairments or limitations, the ALJ was permitted to interpret this medical evidence.

Likewise, the ALJ properly interpreted plaintiff's testimony in formulating the RFC, and the ALJ's incorporation of limitations based partly on the Plaintiff's testimony does not constitute legal error. In the RFC formulation, the ALJ noted Plaintiff's testimony about her "stroke," "hearing loss," "issues with balance," "knee issues," and increased use of her walker when the weather is cold. *Id.* 144. Accordingly, the ALJ assessed Plaintiff with physical limitations to only "occasionally climbing ramps or stairs, never climbing ladders, ropes, or scaffolds, occasionally balancing, stooping, kneeling, crouching, and crawling." *Id.* 146. The RFC also stated that Plaintiff must avoid all exposure to cold, based on her testimony that "she has difficulty walking the colder it gets." *Id.* An ALJ is permitted to interpret a claimant's testimony amongst other medical evidence in formulating the RFC; hence, the ALJ here did not commit legal error in partly relying on Plaintiff's testimony in formulating the RFC.

In conclusion, the ALJ did not commit legal error, despite the lack of a medical opinion regarding Plaintiff's physical functioning, because the ALJ based the RFC on his interpretation of objective medical evidence, generally displaying a normal functional capacity, and Plaintiff's testimony, which indicated she had some physical limitations.

2. **The ALJ considered Plaintiff's impairments in his RFC assessment and adequately explained his omission of mental limitations in his persuasiveness analysis.**

In Plaintiff's second argument, she argues that the ALJ committed legal error by failing to consider her anxiety disorder and depressive disorder—her non-severe mental impairments—in formulating the RFC. Pl.'s Br. 14. Plaintiff also contends the ALJ should have considered her "memory problems." *Id.* In response, Defendant argues that the ALJ discussed Plaintiff's mental impairments throughout steps three and four and that substantial evidence supports the omission of any mental limitations. Def.'s Br. 10–11.

The Court agrees with Defendant. As will be discussed further below, the ALJ adequately considered Plaintiff's anxiety disorder, depressive disorder, and additional memory problems, as evidenced by his discussion of each impairment's limiting effects at step three of the RFC assessment. Then, in his persuasiveness analysis at step four, the ALJ adequately supported his decision to omit mental limitations, as he cited evidence of Plaintiff's generally normal mental functioning through his discussion of the SAPCs' medical opinion and the DDS psychological examiners' medical opinion.

   a. **The ALJ adequately considered Plaintiff's non-severe anxiety disorder, depressive disorder, and Plaintiff's memory problems, as he discussed the limiting effects and relevant evidence of each impairment at step three and adequately explained his omission at step four.**

To properly consider a claimant's impairments, the ALJ must consider all of a claimant's medically determinable impairments, all the evidence in the record, and the limiting effects of all

10

documented impairments, regardless of whether those impairments are severe or non-severe. 20 C.F.R. § 404.1545(a)(1)–(3); *see also Castillo v. Kijakazi*, 599 F. Supp. 3d 483, 488 (W.D. Tex. 2022) ("Thus, even where—as is the case here—an ALJ finds that a claimant's medically determinable mental impairment isn't severe, the ALJ must still consider its impact when assessing the claimant's residual functional capacity."). Yet, the ALJ is not required to "comment on every piece of evidence'" in their written opinion. *Trillo v. O'Malley*, No. EP-23-CV-00320-ATB, 2024 WL 4653190, at *6 (W.D. Tex. Nov. 1, 2024) (quoting *Price v. Astrue*, 401 F. App'x 985, 986 (5th Cir. 2010)). Likewise, procedural perfection is not required; the ALJ must only build an accurate and logical bridge from the evidence to the RFC. *Id.*

Hence, so long as the ALJ properly considers a claimant's mental impairments, an ALJ does not commit legal error in excluding limitations from the RFC. *See Hernandez v. Comm'r. of Soc. Sec.*, 748 F. Supp. 3d 442, 448 (W.D. Tex. 2024) ("[A]n ALJ does not commit legal error by declining to include mental limitations in a claimant's RFC, so long as the ALJ's opinion makes clear that he considered the limiting effects and restrictions of all impairments in the RFC analysis."); *Jakobs*, 2023 WL 7138684, at *5–6 (holding that the ALJ's omission of mental limitations from the RFC was not a legal error, despite finding mild limitations in the paragraph B criteria at step two and agreeing with a medical opinion that found the same, because the ALJ properly considered the plaintiff's mental impairments).

> **i. At step three, the ALJ considered the Plaintiff's testimony about the limiting effects of her anxiety disorder, depressive disorder, and memory problems, and the ALJ explained why he omitted mental limitations based on this evidence.**

The ALJ adequately considered Plaintiff's anxiety disorder, depressive disorder, and memory problems as he discussed the limiting effects of each impairment in his step three analysis. During Plaintiff's telephonic hearing with the ALJ, Plaintiff testified about the limitations she

11

experiences due to her anxiety disorder, depressive disorder, and memory problems.  Tr. 168. Plaintiff testified that she has anxiety when speaking with others because people often become impatient with her forgetfulness and inability to remember what she is saying amid conversation. *Id.* 169.  Plaintiff also testified that she has anxiety, even when attending family functions, because of her incontinence.  *Id.*  Plaintiff testified that her depressive disorder is linked to her anxiety, but that her stroke in 2017—and her mother's death—play a role as well.  *Id.*  168.

Accordingly, in the ALJ's discussion at step three, he discussed Plaintiff's testimony about her anxiety caused by people's impatience with her, her anxiety related to her incontinence, her struggle staying in public places and family functions, and her forgetfulness of friends and family. *See* Tr. 145.  The ALJ also acknowledged Plaintiff's Function Report, where Plaintiff wrote that her stroke affects her "memory, completing tasks, concentrating, understanding, following instructions, and getting along with others."  *Id.*  Furthermore, the ALJ explained why he omitted mental limitations based on these symptoms: "[t]he Claimant's statements about the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record …."  *Id.*

Thus, because the ALJ discussed Plaintiff's testimony regarding her mental limitations and explained her reasoning for excluding those limitations at step three, the RFC adequately considered Plaintiff's mental limitations.

### ii. At step four, the ALJ's articulation of the evidence supports his explanation for omitting limitations from the RFC.

Furthermore, the ALJ adequately supports his explanation for omitting mental limitations from the RFC through his articulation of the evidence at step four, as the ALJ displays that the medical evidence is indeed inconsistent with Plaintiff's testimony from her telephonic hearing.  In his persuasiveness analysis, the ALJ found persuasive both the DDS psychological examiners'

12

medical opinion that Plaintiff had "no more than mild limitations" across the paragraph B criteria and the SAPCs' medical opinion that Plaintiff could "carry out basic instruction and exhibit contextually appropriate behavior." Tr. 147.  The ALJ supported his persuasiveness analysis by citing to medical examination evidence of Plaintiff's "intact" remote and immediate memory, mental examination evidence that was "within normal limits," and Plaintiff's lack of treatment and hospitalization history for her mental impairments.  *Id.*  These medical opinions and medical evidence cited in the ALJ's persuasiveness analysis support his explanation and decision for omitting mental limitations from the RFC.[4]

Although the SAPCs' medical opinion stated that Plaintiff "would have some difficulty maintaining consistent employment from mental health standpoint," the ALJ specifically rejected this portion of the SAPCs' opinion and cited medical evidence from the Texas Tech Health Science Center Office of Treatment records stating that Plaintiff had "normal mood and affect," "normal attention and concentration," and that Plaintiff was "alert and cooperative." *Id.*  Hence, through the ALJ's articulation of the evidence at step four—and express rejection of the only medical evidence indicating that Plaintiff's mental impairment would cause her any difficulty in maintaining consistent employment—the ALJ adequately supported his decision to omit mental limitations from the RFC.

In sum, the ALJ did not commit legal error by omitting mental limitations from the RFC because the ALJ considered the limiting effects of Plaintiff's mental impairments in the RFC

---

[4] *See Trillo*, 2024 WL 4653190, at *7–8 (finding no legal error in the ALJ's omission of mental limitations from the RFC because the ALJ discussed evidence of the plaintiff's "reserved mood and mildly constricted affect," "normal memory," "good eye contact," "appropriate mood," and "normal attention and concentration"); *Jakobs*, 2023 WL 7138684, at *6 (noting that evidence in the persuasiveness analysis supporting the ALJ's decision not to include any social limitations in the RFC included "treatment records and mental status examinations [that] did not confirm any psychiatric hospitalizations or mental health treatment" and that "plaintiff had no more than mild or minimal limited mental functional abilities in the four functional areas of the PRT").

13

assessment at step three and thoroughly discussed evidence relevant to her mental impairments in his persuasiveness analysis at step four. Moreover, the ALJ's discussion of the evidence regarding Plaintiff's mental limitations supports his decision to omit limitations from the RFC.

**3. The ALJ supported his decision to omit limitations through his persuasiveness analysis of the SAPCs' medical opinion and the DDS psychological examiners' medical opinion.**

Lastly, Plaintiff argues the ALJ failed to articulate the supportability and consistency of the SAPCs' medical opinion because the RFC does not contain the SAPCs' articulated limitations. Pl.'s Br. 18–20. In response, Defendant argues that "[t]he Court should affirm the ALJ's decision because the ALJ performed a proper persuasiveness analysis specifically addressing supportability and consistency." Def.'s Br. 14–15.

The Court agrees with Defendant. Here, the ALJ properly evaluated the supportability and consistency of the SAPCs' medical opinion with other medical evidence in the record. Therefore, the ALJ did not commit legal error in not incorporating limitations into the RFC.

**a. The ALJ's supportability and consistency analysis of the SAPCs' medical opinion and DDS psychological examiners' medical opinion supports the RFC.**

"An RFC need not 'mirror or match a medical opinion' to be supported by substantial evidence." *Floyd v. Dudek*, No. EP-24-CV-00045-MAT, 2025 WL 952246, at *3 (W.D. Tex. Mar. 28, 2025) (quoting *David W. G. v. O'Malley*, No. 4:23-CV-3462, 2024 WL 5284884, at *7 (S.D. Tex. Dec. 3, 2024), *report and recommendation adopted sub nom. Gates v. Dudek*, No. CV H-23-3462, 2025 WL 662050 (S.D. Tex. Feb. 28, 2025)).

Instead, the RFC must be supported by the ALJ's evaluation of the supportability and consistency of each medical opinion in the persuasiveness analysis. *See Moreira v. Comm'r. of Soc. Sec. Admin.,* 2025 WL 1090895, at *5 (finding that the ALJ did not commit legal error—despite the RFC differing from all of the medical opinions—because the RFC was supported by

the ALJ's articulation of the evidence in their supportability and consistency analysis); *Boller v. Comm'r., SSA*, No. 421CV01001SDJCAN, 2022 WL 18586837, at *10–11 (E.D. Tex. Dec. 12, 2022), *report and recommendation adopted*, No. 4:21-CV-1001-SDJ, 2023 WL 1765909 (E.D. Tex. Feb. 3, 2023) (holding that the ALJ's decision to omit mental limitations was supported by substantial evidence—despite finding persuasive the medical opinion that the claimant could "carry out simple instructions"—because the ALJ adequately articulated the supportability and consistency of this medical opinion).

"Supportability looks internally to the bases presented by the medical opinion itself'" while 'consistency is an external inquiry that juxtaposes a medical opinion to other evidence in the record, including opinions of other medical professionals." *Morales v. Comm'r. of Soc. Sec. Admin.*, No. EP22CV00120FMRFC, 2022 WL 18912157, at *3 (W.D. Tex. Dec. 5, 2022), *report and recommendation adopted sub nom*. *Morales v. Barnhart*, No. EP-22-CV-00120-FM, 2023 WL 2626075 (W.D. Tex. Mar. 23, 2023) (citation modified).

Here, the ALJ properly evaluated the supportability and consistency of the SAPCs' medical opinion, looking internally to the examination evidence within the medical opinions, and then looking externally to compare those medical opinions with other evidence in the record.  In the ALJ's persuasiveness analysis, the ALJ stated that the objective evidence within the SAPCs' examination—showing only "mildly dysthymic mood," with "good eye contact, rapport," and "intact remote and immediate memory"—generally supported the SAPCs' statement that Plaintiff "can carry out basic instructions and exhibit contextually appropriate behavior."  Tr. 147.  The ALJ also analyzed the consistency of the SAPCs' opinion, finding the SAPCs' assertion that Plaintiff would have "some difficulty maintaining consistent employment" inconsistent with the Office Treatment Records from Texas Tech Health Science Center, that "reveals she was alert and

15

cooperative, she had normal mood and affect, and she had normal attention and concentration." *Id.* 147, 882. Hence, despite not incorporating the portion of the SAPCs' opinion the ALJ found persuasive, the ALJ did not commit legal error because he properly evaluated which "internal bases" supported the SAPCs' opinion and which "external" evidence he found inconsistent with the opinion.

In sum, the ALJ did not commit any legal error. First, the ALJ did not substitute his lay opinion of raw medical data in formulating the RFC because the ALJ properly interpreted objective medical evidence and Plaintiff's testimony. Next, the ALJ considered Plaintiff's non-severe mental impairments because the ALJ discussed the limiting effects and relevant evidence for Plaintiff's mental impairments in the RFC assessment at step three and the persuasiveness analysis at step four. Lastly, the ALJ did not err in omitting mental limitations from the RFC because the ALJ adequately supported his RFC determination through his supportability and consistency analysis at step four.

### III.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the decision of the Commissioner be **AFFIRMED** pursuant to 42 U.S.C. § 405(g).

**SIGNED** and **ENTERED** this <u>4th</u> day of September 2025.

_____
**MIGUEL A. TORRES**
**UNITED STATES MAGISTRATE JUDGE**